## Green, et al. v. Isaacs, Executor, et al.

### (Decided December 7, 1917.)

### Appeal from Marion Circuit Court.

Wills—Contests—Sufficiency of Evidence—Mental Incapacity—Undue Influence.—In a proceeding to contest a will, evidence of mental incapacity and undue influence examined and held insufficient to take the case to the jury.

C. S. HILL and S. A. RUSSELL for appellants.

P. K. McELROY and R. S. McELROY for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Edward Green, Franklin Green and James Green, brothers of Mrs. Mollie Schwaner, and Mrs. Sallie Burks, her sister, brought this suit to set aside Mrs. Schwaner's will on the ground of undue influence and mental incapacity. At the conclusion of the evidence, the trial court directed the jury to return a verdict sustaining the will. Judgment was entered accordingly, and the contestants appeal.

The testatrix died in the year 1914, a resident of Marion county. By her will, which was duly probated in the county court, her husband was to receive the income from all of her property until his death, and thereupon her sister, Mrs. Sallie Burks was to receive a one-half undivided interest in a certain house and lot in Lebanon, while the remainder of the property was to be divided equally among the children of her husband.

It appears that the testatrix was a seamstress and married Casper Schwaner late in life. When the will was executed her husband was mentally and physically feeble. J. E. Isaacs, who was named as executor of the will, had been in the habit of advising her in re-

gard to her business. On the day the will was executed, he called on the testatrix, and she told him exactly how she wished to dispose of her property. He then went to the office of H. S. McElroy, and had him prepare the will in accordance with the directions of the testatrix. Thereupon they both returned to the home of the testatrix, and after each paragraph of the will was explained to her, she signed the will in their presence and they signed it as attesting witnesses in her presence and at her request and in the presence of each other. At that time her mind was clear and she fully understood what she was doing. It further appears that the testatrix kept an account at one of the banks and that this account by the direction of her husband had been transferred from his name to the name of the testatrix. It also appears that the testatrix inherited about $136.00. There is also testimony to the effect that she received $500.00 insurance money, but this testimony is not very persuasive. The brothers and sisters of the testatrix, with the exception of Mrs. Burks, rarely ever visited her. Mrs. Burks nursed her several weeks prior to her death.

For the contestants, Mrs. Burks testified that she nursed the testatrix at her request. None of Casper Schwaner's children lived in the home of the testatrix for a period of ten years prior to her death, though Logan Schwaner occasionally visited his father. On the day the will was executed, Mrs. Isaacs, wife of the executor, suggested to witness that they leave the room while the will was under consideration. After they left the testatrix told her that she wanted her to have her money and gave her two bank books. Prior to that time, testatrix had told her that the property was for Mr. Schwaner to live off of, and after his death, it was to be equally divided between the Green heirs and Schwaner heirs. She also testified that her sister told her that she wanted Father Hogarty to have some of her money. When this conversation took place her sister's mind was all right. Edward Green testified that his sister made money by sewing and that when he called to see her, just prior to the execution of the will, she asked him about his tobacco crop. At that time she never said anything about what she was going to do with her property. Obe Newton, testified that he came to see the testatrix about a note which his son owed. At that time the testatrix said that she wanted her sister, Sallie, to have the note. The testatrix also told him that she had written her will so that Mr. Schwaner would be taken care of during his life-

time. Caleb Ballard who saw the testatrix in her last illness, testified that he went there to pay her some money. Testatrix said that she wanted to give that money to Sallie. Bridelia Green called to see the testatrix on the fourth of July. At that time testatrix spoke of her sister Sallie's waiting on her and said that her sister would be well paid for it. Father Hogarty, who visited testatrix frequently before her death, testified that the testatrix spoke in a general way of her desire to make a donation to the church. At that time she was physically weak, but mentally all right.

It will be observed that not a single witness testified to any act tending to show mental incapacity on the part of the testatrix. The sum and substance of all the testimony is that she either gave or intended to give, her property to her sister, or to her brothers and sisters, or to the church. It is argued, however, that the testatrix was under the domination of Mr. Isaacs, and that in making the devise in favor of her husband's children, she carried out his wishes and not her own. The difficulty with this argument is that it is based on mere suspicion and not on facts. It does not appear that any of her husband's children ever suggested to the testatrix or to Mr. Isaacs, that the testatrix make a will in their favor. It does not appear that the relations between Mr. Isaacs and the children of Casper Schwaner, were intimate. No reason is shown why Mr. Isaacs should have used his influence in their behalf, nor does it appear that he ever suggested to testatrix that she make a will in their favor. On the contrary the evidence shows that the will was made to conform solely to the wishes of the testatrix herself. Furthermore, it was not shown that the testatrix had any property of her own besides her inheritance and the insurance money, which aggregated $636.00. It does appear, however, that her husband's deposit was transferred to her. She did reward her sister by giving her a one-half interest in a house and lot of the estimated value of $800.00. This devise equalled all the property which she was shown to have acquired by her own efforts. In the absence of proof to the contrary, it is a reasonable supposition that the other property in her name was acquired through her husband, and that being true, it was natural that she should give to his children after his death. Viewing the evidence of mental incapacity and undue influence as a whole, it is clear that it does not rise to the dignity of proof, but tends only to excite suspicion. Under these circumstances, the jury should not

have been permitted to guess away the right of the testatrix to dispose of her property as she saw fit. Brent, et al. v. Fleming, 165 Ky. 366, 176 S. W. 113; Clark v. Young's Exor., 146 Ky. 377, 142 S. W. 1032. It follows that the trial court did not err in directing the jury to return a verdict in favor of the will.

Judgment affirmed.